

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOMO KENYATTA-BEAN, *ET AL.* | CIVIL ACTION |
| VERSUS | NO: 04-2592 |
| HOUSING AUTHORITY OF NEW ORLEANS, *ET AL.* | SECTION: "S" (2) |

### ORDER AND REASONS

**IT IS HEREBY ORDERED:**

(1) Defendant Housing Authority of New Orleans' (HANO's) motion for summary judgment (Document 14) is **DENIED**;

(2) HANO's motion for partial summary judgment (Document 16) is **GRANTED IN PART**, and plaintiffs' claim for merit pay increases is **DISMISSED**;

(3) Plaintiffs' motion for additional time to conduct discovery (Document 25) is **DENIED AS MOOT**;

(4) Defendant the Department of Housing and Urban Development's motion to dismiss (Document 36) is **DENIED**; and

1

(5) Plaintiffs' motion to certify a class (Document 30) is **CONDITIONALLY GRANTED**.

**A.     Background.**

Plaintiffs are employees or members of the Executive Board of the Employee Relations Committee of defendant Housing Authority of New Orleans (HANO). Plaintiffs allege that they and similarly situated individuals were not paid overtime by HANO for hours worked in excess of 40 hours per week, and were sometimes not paid at all. They allege that HANO deliberately miscalculated their pay in order to circumvent their rights under the Fair Labor Standards Act (FLSA). Additionally, plaintiffs claim that HANO refused to provide them with Merit Pay Increases (MPI's) for 2003 and 2004, despite the funding of such MPI's, and that HANO officials diverted or misused the MPI funds to give themselves unauthorized salary increases. Plaintiffs seek to certify their suit as a class action, and seek proper overtime pay for the hours they worked; recalculation of their rates of pay; payment of the appropriate minimum wage, if necessary; liquidated damages; and attorney's fees and costs. Plaintiffs have named as defendants HANO, its receivers and Chairman of the Board, the Department of Housing and Urban Development, and its Secretary.

**B.     HANO's Motion for Summary Judgment (Document 14).**

HANO argues that it is entitled to summary judgment because (1) applying the FLSA to HANO violates the Tenth Amendment, and (2) it is immune from suit under the Eleventh Amendment to the United States Constitution.

**1.     The Tenth Amendment.**

The Tenth Amendment provides that "[t]he powers not delegated to the United States by

2

the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Unlike the Eleventh Amendment, the Tenth Amendment applies to states' political subdivisions. *See Printz v. United States*, 521 U.S. 898, 931 n. 15, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) ("We long ago made clear that the distinction [between states and their subdivisions] is peculiar to the question of whether a governmental entity is entitled to Eleventh Amendment sovereign immunity; we have refused to apply it to the question of whether a governmental entity is protected by the Constitution's guarantees of federalism, including the Tenth Amendment.").

In 1974 Congress amended the FLSA to include public agencies within its definition of covered employers, making the statute applicable to a wide range of state and local government employees. The Supreme Court then issued two key decisions concerning the application of the FLSA to the states and their political subdivisions. In *National League of Cities v. Usery*,[1] the Court held the 1974 amendments unconstitutional under the Tenth Amendment, ruling that Congress did not have the power to extend the FLSA to state areas of "traditional governmental functions." Nine years later in *Garcia v. San Antonio Metro. Transit Auth.*,[2] the Court overruled *Usery* and abandoned the "traditional governmental functions" test:

> We therefore now reject, as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is "integral" or "traditional." Any such rule leads to inconsistent results at the same time that it disserves principles of democratic self-governance, and it breeds inconsistency precisely because it is divorced from those principles.

\* \* \*

---

[1] 426 U.S. 833, 855, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

[2] 469 U.S. 528, 105 S.Ct. 1005, 83 L.E.2d 1016 (1985).

> The fact that some federal statutes such as the FLSA extend general obligations to the States cannot obscure the extent to which the political position of the States in the federal system has served to minimize the burdens that the States bear under the Commerce Clause.

> \* \* \*

> Insofar as the present cases are concerned . . . we need go no further than to state that we perceive nothing in the overtime and minimum-wage requirements of the FLSA, as applied to [defendant], that is destructive of state sovereignty or violative of any constitutional provision. [Defendant] faces nothing more than the same minimum-wage and overtime obligations that hundreds of thousands of other employers, public as well as private, have to meet.

*Id.* at 554.

HANO argues that more recent Supreme Court cases have abandoned the reasoning of *Garcia* and returned to the *National League of Cities* analysis. However, it is undisputed that the Supreme Court has not specifically overruled *Garcia*, and until the Court does so, *Garcia* remains controlling precedent:

> The Commission urges us to return to the contrary interpretation of the Tenth Amendment expressed in *National League of Cities*, the case *Garcia* expressly overruled. We must remind the Commission that we cannot diverge from Supreme Court precedent, regardless of what we might do if we were cutting from whole cloth. The Supreme Court may decided to revisit *Garcia* at some point in the future. Unless and until the Supreme Court does so, we are required to follow *Garcia*. We cannot, of our own accord elect to apply the very principles that *Garcia* rejected; namely that the Tenth Amendment prohibits Congress from extending the FLSA to state employees.

*May v. Arkansas Forestry Comm'n*, 993 F.2d 632, 636 (8th Cir. 1993).[3] Accordingly, because

---

[3] *See also Adams v. Department of Juvenile Justice of the City of New York*, 143 F.3d 61, 65 (2d Cir. 1998); *West v. Anne Arundel County*, 137 F.3d 752, 760 (4th Cir.), *cert. denied*, 525 U.S. 1048, 119 S.Ct. 607, 142 L.Ed.2d 548 (1998); *Bowman v. City of Indianapolis*, 133 F.3d 513, 518 (7th Cir. 1998); *Brinkman v. Department of Corrections of Kansas*, 21 F.3d 370, 371 (10th Cir.), *cert. denied*, 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *Biggs v. Wilson*, 1 F.3d 1537, 1543-44 (9th Cir. 1993), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994) (each relying on *Garcia* and rejecting argument that court could abandon *Garcia*'s reasoning).

*Garcia* is controlling, the court finds that the Tenth Amendment does not prevent the FLSA from applying to HANO and covering its employees, and HANO's motion for summary judgment on the basis of Tenth Amendment immunity is denied.

### 2. Eleventh Amendment Immunity.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend in any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." In addition to its explicit bar to federal suits against states, the Eleventh Amendment bars suits against arms of a state and a state's *alter egos*. *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986). The Fifth Circuit employs a six-factor test to determine whether an entity is an arm of the state that is entitled to sovereign immunity under the Eleventh Amendment, focusing on:

1. Whether the state statutes and case law view the agency as an arm of the state;
2. The source of the entity's funding;
3. The entity's degree of local autonomy;
4. Whether the entity is concerned primarily with local as opposed to statewide problems;
5. Whether the entity has the authority to sue and be sued in its own name;
6. Whether the entity has the right to hold and use property.

*United States v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004), *cert. denied*, 125 S.Ct. 2905, 162 L.Ed.2d 294 (2005). This test seeks to determine "if the state is the real, substantial party in interest because the suit seeks to impose a liability which must be paid from public funds in the state treasury." *Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir.), *cert. denied*, 528 U.S. 1004, 120 S.Ct. 498, 145 L.Ed.2d 385 (1999). The six factors "simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Perez v. Region 20 Education Serv. Center*, 307 F.3d 318, 327 (5th Cir. 2002).

Although state statutes and decisions view HANO as an arm of the state,[4] the remaining factors of the test for immunity do not support HANO's claim. There is no evidence in the record regarding the source of HANO's funding, and the Louisiana Revised Statutes provide that the state is not responsible for HANO's debts.[5] A municipal housing authority may operate only within "the municipality and the area within ten miles from the territorial boundaries thereof." LSA-R.S. 40:396. HANO has the power to "[s]ue and, subject to the limitations, privileges, and immunities provided by applicable law, be sued." LSA-R.S. 40:431 C. (2). HANO has the statutory power to "plan, prepare, carry out, develop, construct, acquire, improve, reconstruct, renovate, rehabilitate, enlarge, reduce, alter, manage, own, lease, and operate housing, housing projects or developments, or any portions of housing projects or developments, and nonresidential and mixed-use facilities."[6]

The court finds that HANO has not demonstrated that it is an arm of the state for purposes of Eleventh Amendment immunity. *See Norris v. Housing Authority of New Orleans*, 2003 WL 22384936, at *2 (E.D. La. Oct. 16, 2003) (denying HANO's motion for summary judgment based on alleged Eleventh Amendment immunity because HANO failed "through

---

[4] *See* LSA-R.S. 40:384(16) (defining a local housing authority as a "public body, corporate and politic" that is "a political subdivision of this state").

[5] *See* LSA-R.S. 40:403 ("Except to the extent that the municipality or parish may expressly elect to undertake such liability, neither the municipality or parish with respect to which a local housing authority is established, nor any municipality or parish participating in a regional housing authority, nor the state, nor any other public agency of this state shall be responsible for the debts or liabilities of any local housing authority or regional housing authority.").

[6] LSA-R.S. 40:436 A. This statute also provides that the terms "development" and "housing development" include the land on which such developments are situated. LSA-R.S. 40:436 B. (2)(d).

affidavit or otherwise" to present "facts which establish it as an alter ego of the State of Louisiana"). HANO's motion for summary judgment on the basis of Eleventh Amendment immunity is denied.

**C.   HANO'S Motion for Partial Summary Judgment (Document 16).**

HANO's motion for partial summary judgment seeks the dismissal of two groups of claims: (1) the FLSA claims of plaintiffs Bean, Butler, and Jones, and (2) the merit pay increase claims of all plaintiffs.

**1.   FLSA claims of Bean, Butler, and Jones.**

The FLSA provides that individuals "employed in a bona fide executive, administrative, or professional capacity" are exempt from its coverage. 29 U.S.C. § 213 (a)(1). HANO argues that plaintiffs Bean, Butler, and Jones are exempt under this provision. The FLSA's exemptions are "construed narrowly against the employer and the employer has the burden of proving that an employee is exempt." *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 402 (5th Cir. 2002).

Generally, an exempt employee is one whose primary duty consists of office work directly related to management policies or general business operations for the employer or the employer's customers, including work requiring the exercise of discretion and independent judgment. *See, e.g., Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331-32 (5th Cir. 2000). In arguing that Bean, Butler, and Jones are exempt employees, HANO relies solely on affidavit of Irma Garcia, its Director of Human Resources, who attests that these individuals are employed in positions that are exempt from state overtime under the Louisiana Civil Service Rules. HANO cites no authority for its argument that these civil service rules are dispositive under the FLSA and presents no other facts demonstrating that Bean, Butler, and Jones are

exempt employees. Additionally, Bean, Butler, and Jones have furnished affidavits that HANO has used salary reduction as a disciplinary measure against individuals in their positions, and individuals whose pay is "subject to reduction because of variations in the quality or quantity of the work performed" are not considered exempt from the FLSA. 29 C.F.R. § 541.118(a); *see also Auer v. Robbins*, 519 U.S. 452, 456, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (noting that FLSA gave the Secretary of Labor "broad authority" to define the scope of its exemptions, and holding that the Secretary's determination that the "no disciplinary deduction" principle applied to public sector employees was not unreasonable). Accordingly, genuine issues of material fact regarding whether Bean, Butler, and Jones are exempt from the FLSA precludes summary judgment on their FLSA claims.

2. **Merit pay increase claims.**

HANO argues that the plaintiffs' state law claims that they did not receive the appropriate merit pay increases should be dismissed because these claims are properly brought to the Louisiana Civil Service Commission.

The Louisiana Constitution provides:

> [The civil service] commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.

La. Const. Art. 10. Accordingly, employment related claims by classified employees must be presented to the Civil Service Commission, and this court is without jurisdiction to entertain such

8

claims. *See Russo v. Jefferson Parish Water Dep't*, 1998 WL 19629, at *5-*6 (E.D. La. Jan. 16, 1998) (holding that "as a civil servant, [plaintiff] was obligated to bring before the board his state claims arising from his termination," and dismissing plaintiff's claim that he was wrongfully terminated).[7]

Plaintiffs' only justification for bypassing the state's constitutional requirement that they present their claims to the Civil Service Commission is that doing so would be a futile act because HANO has a professed moratorium on merit pay increases. The fact that plaintiffs believe the Civil Service Commission may rule against them does not confer jurisdiction on this court for matters that are properly brought to the Commission.[8] Plaintiffs' merit pay increase claims are dismissed.

D.  **Plaintiffs' Rule 56(f) motion for additional time to conduct discovery (Document 25).**

Rule 56(f) provides that a party may obtain an order allowing additional discovery prior to the entry of summary judgment. Plaintiffs' Rule 56(f) motion is denied as moot because the

---

[7] *See also Vanderwall v. Horner*, 635 F. Supp. 688, 691-92 (E.D. La. 1986) (stating in *dicta* that absent a constitutional violation, "federal courts have no business reviewing the personnel decisions of state agencies" which are solely within the subject matter jurisdiction of the Louisiana Civil Service Commission); *Akins v. Housing Authority of New Orleans*, 856 So. 2d 1220, 1222 (La. App. 4th Cir.) ("The general thrust of the exclusive jurisdiction grant is to preclude district courts from having concurrent jurisdiction with the Civil Service Commission over classified civil service employer-employee disputes that are essentially employment-related."), *writ denied*, 861 So. 2d 54 (La. 2003).

[8] In the event of an adverse ruling, plaintiffs may appeal the Commission's decision to the Court of Appeal, First Circuit, State of Louisiana. *See Russo v. Jefferson Parish Water Dep't*, 1998 WL 19620, at *5 (E.D. La. Jan. 16, 1998) ("The Civil Service Commission's decisions are subject to review by the Court of Appeal. Art. 10 § 12. Louisiana courts do not allow plaintiffs to circumvent the exclusive jurisdiction of the Civil Service Commission.").

court denies HANO's motion for summary judgment on the FLSA claims of Bean, Butler, and Jones, and because HANO's motion to dismiss the claims for merit pay increases is granted because of lack of jurisdiction.

E.    **HUD's motion to dismiss (Document 36).**

HUD argues that plaintiffs' claims should be dismissed based on 42 U.S.C. §1437d(j)(3)(H). This statute, entitled "Contract provisions and requirements; loans and annual contributions," provides:

> If the Secretary (or an administrative receiver appointed by the Secretary) takes possession of a public housing agency (including all or part of any project or program of the agency), or if a receiver is appointed by a court, the Secretary or receiver shall be deemed to be acting not in the official capacity of that person or entity, but rather in the capacity of the public housing agency, and any liability incurred, regardless of whether the incident giving rise to that liability occurred while the Secretary or receiver was in possession of all or part of the public housing agency (including all or part of any project or program of the agency), shall be the liability of the public housing agency.

HUD cites no authority for its argument that this statute, appearing in the United States Code provision generally addressing defaults by a public housing agency with respect to covenants or conditions applicable to it, insulates HUD from any and all liability in FLSA actions. Accordingly, HUD's motion to dismiss is denied.

F.    **Motion for class certification.**

The FLSA provides that an action may be instituted "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

A collective action under the FLSA is a "unique species of group litigation" in which

each plaintiff "desiring to be included in the litigation must "opt in" to the suit by filing a written consent with the court." 7B Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 1807, 468-69 (2005). In order to certify a collective action under the FLSA:

> First, the named representatives and the putative members of the prospective FLSA class must be similarly situated. Second, the pending action must have general effect. A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.

*England v. New Century Financial Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005). It is well established that plaintiffs bear the burden of demonstrating only that they are "similarly situated" to the proposed class of other employees, not that they are identically situated to them. *England*, 370 F. Supp. 2d at 507-08. In doing so, plaintiffs must show "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.* at 508.

There are two different approaches courts have taken to resolve the issue of whether plaintiffs are similarly situated to a proposed class: the spurious class action approach, which originated in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990); and the "two-step" approach, which was first used in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988). Although the Fifth Circuit has explicitly declined to adopt either test,[9] lower courts in this circuit have unanimously adopted the "two-step" approach, and the court finds the reasoning of those

---

[9] *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995).

courts persuasive.[10]  Under the two step approach:

> [T]he trial court approaches the "similarly situated " inquiry via a two-step analysis.  The first determination is made at the so-called "notice state."  At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.  If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."  The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination of the similarly situated question.  If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives – i.e., the original plaintiffs – proceed to trial on their individual claims.

*Id.* at 1213-14.

Under the two-step approach, in making the determination of whether plaintiffs are similarly situated and notice should be given:

---

[10]   *E.g., England,* 370 F. Supp. 2d at 509; *de la Cruz v. El Paso County Water Improvement District No. 1,* 2005 WL 2291015, at *2 (W.D. Tex. Sept. 19, 2005); *Quintanilla v. A&R Demolition, Inc.,* 2005 WL 2095104, at *12 (S.D. Tex. Aug. 30, 2005); *Dudley v. Texas Waste Systems, Inc.,* 2005 WL 1140605, at *1(W.D. Tex. May 16, 2005); *Clarke v. Convergy's Customer Management Group, Inc.,* 370 F. Supp. 2d 504, 509 (S.D. Tex. 2005); *Neagley v. Atascosa County EMS,* 2005 WL 354085, at *3 (W.D. Tex. Jan. 7, 2005); *Blake v. Colonial Savings, F.A.,* 2004 WL 1925535, at *2 (S.D. Tex. Aug. 16, 2004); *Baroni v. Bellsouth Telecommunications, Inc.,* 2004 WL 1687434, at *10 (E.D. La. July 27, 2004); *Basco v. Wal-Mart Stores, Inc.,* 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Donohue v. Francis Serv., Inc.,* 2004 WL 1161366, at *1 (E.D. La. May 24, 2004); *Jackson v. City of San Antonio,* 220 F.R.D. 55, 62 (W.D. Tex. 2003); *Villatoro v. Kim Son Restaurant, L.P.,* 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003); *Guzman v. Varco Int'l, Inc.,* 2002 WL 32639237, at *2 (S.D. Tex. May 30, 2002).

> [T]he court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy, or plan infected by discrimination." [C]ourts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified . . .; whether affidavits of potential plaintiffs were submitted . . . ; and whether evidence of a widespread discriminatory plan was submitted . . . .

*England*, 370 F. Supp. 2d at 508. Additionally, "while a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *England*, 370 F. supp. 2d at 508. The court "may deny plaintiff's right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Quintanilla v. A&R Demolition, Inc.*, 2005 WL 2095104, at *13 (S.D. Tex. Aug. 30, 2005).

The court finds that plaintiffs have satisfied their burden of demonstrating they are similarly situated to potential class members, and that a class should be conditionally certified and notice given to potential class members to provide them with the opportunity to opt into this action. Plaintiffs' affidavits aver that they worked more than 40 hours per week, and that HANO denied them overtime pay for these hours. Plaintiffs make substantial allegations that HANO had a general policy of denying such overtime, and that they and absent class members were together victims of a single decision, policy, or plan. There is no evidence that this case arises from circumstances purely personal to the plaintiff rather than from a generally applicable rule, policy, or practice. Accordingly, plaintiffs' motion to certify a class is conditionally granted. The conditionally certified class shall consist of all current and former employees of HANO who were paid on an hourly basis at any time between September 3, 2001 and present and who worked, at any time therein, more than 40 hours during a workweek. The parties shall submit an

agreed order addressing the appropriate notification to be given to the potential class members or memoranda setting forth areas of disagreement to the proposed order by January 10, 2006.

**E.     Conclusions.**

HANO's motion for summary judgment based on the Tenth and Eleventh Amendments is denied. HANO's motion for partial summary judgment is granted as to plaintiffs' claims for merit pay increases, and insofar as it seeks dismissal of plaintiffs' claims for unpaid overtime is denied. Plaintiffs' motion for additional time to conduct discovery is denied as moot. HUD's motion to dismiss is denied. Plaintiffs' motion to certify a class is conditionally granted.

New Orleans, Louisiana this __17__ day of November, 2005.

Mary Ann Vial Lemmon
United States District Judge